**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Robert Gennell, Jr. et al</u>

      **v.**

<u>FedEx Ground Package System, Inc.</u>

Case No. 05-cv-145-PB
Opinion No. 2013 DNH 110

<u>**MEMORANDUM AND ORDER**</u>

This class action was filed against Federal Express Ground
Package System, Inc. ("FedEx") by several FedEx drivers based in
New Hampshire who claim that FedEx improperly treated them as
independent contractors rather than employees. The action was
centralized in a multidistrict litigation proceeding with other
similar actions against FedEx. The transferee court later
determined that the New Hampshire drivers could be treated as
independent contractors under New Hampshire common law but that
they qualified as employees under certain state statutes. It
then remanded the action to this court.

Two class claims remain in dispute. Plaintiffs allege in
their second cause of action ("Deduction Claim") that FedEx made
deductions from the drivers' compensation that were prohibited
by N.H. Rev. Stat. Ann. § 275:48. They allege in their eighth

cause of action ("Reimbursement Claim") that FedEx failed to reimburse the drivers for work-related expenses in violation of N.H. Rev. Stat. Ann. § 275:57.[1]  FedEx has filed a motion for summary judgment contending that both claims are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA").  It also argues that the Reimbursement Claim is deficient even if it is not preempted.  Plaintiffs have filed their own motion for partial summary judgment.

## I.   BACKGROUND

### A.   The Relationship between FedEx and Drivers

FedEx is a nationwide small package pick-up and delivery company.  During the class period, the company conducted its business delivery operations under the name "FedEx Ground" ("FEG") and its home delivery operations under the name "FedEx Home Delivery" ("FHD").  The class includes New Hampshire drivers from both FEG and FHD who worked for FedEx as

---

[1]  The parties agree that plaintiffs' fifth cause of action for rescission is foreclosed by the transferee court's ruling, their first cause of action for failure to pay overtime and provide meal breaks and their fourth cause of action alleging a violation of New Hampshire's Consumer Protection Statute fail under New Hampshire law, and their sixth and seventh causes of action for an accounting and declaratory judgment do not state independent claims for relief.  Plaintiffs' third cause of action for fraud is not a class claim and is not at issue at the present time.

independent contractors between April 27, 2002 and June 1, 2009. In re FedEx Ground Package Sys., Inc. Emp't Practices Litig., 273 F.R.D. 424, 470–72 (N.D. Ind. 2008); Tr. 5.[2]

FedEx entered into a standard-form "Operating Agreement" ("OA") with each class member.  See Doc. No. 53-3.  The OA characterizes the drivers as independent contractors.  Doc. No. 53-3 at 6 ("Both [FedEx] and Contractor intend that Contractor will provide these services strictly as an independent contractor, and not as an employee of [FedEx] for any purpose.").  The drivers, nevertheless, agreed to conduct their business in a manner that identified them as part of the FedEx system.  The OA "set[s] forth the mutual business objectives of the two parties . . . but the manner and means of reaching [the] results are within the discretion of the Contractor."  Doc. No. 53-3 at 6.

_____

[2] Plaintiffs proposed, and the MDL court granted certification for, a class period starting on April 27, 2002 with no specified end date.  In re FedEx, 273 F.R.D. at 470, 472.  FedEx's brief describes the class period as running from April 27, 2002 to May 31, 2009.  Doc. No. 53 at 30.  At oral argument, the parties agreed that the class period ended on June 1, 2009, the date FedEx switched to a different business model in New Hampshire.  Tr. 4–5.  The class period was incorrectly described at oral argument as starting on April 29, 2002.  The correct start date is April 27, 2002, as stated in the MDL class certification order.  In re FedEx, 273 F.R.D. at 470, 472.

The drivers agreed to render their services using a FedEx terminal in New Hampshire as their home base.  See id. at 21. They were required to fill out daily logs and inspection reports and file the originals with FedEx at the end of each business day.  Id. at 9.  The drivers also had to meet an "Agreed Standard of Service," which included cooperating with FedEx employees, maintaining the professional image and good reputation of FedEx, and conducting all business activities with integrity and honesty.  Id. at 10-12.  The OA restricted drivers from using their equipment for any other purpose while the equipment was in the service of FedEx.  Id. at 8.

FedEx compensated the drivers through weekly settlement payments.  The settlement payments were calculated using a compensation formula that took into account the volume of the drivers' package deliveries, the number of stops they made, and the density of their delivery area, and deducted certain expenses FedEx incurred on behalf of the drivers.  Id. at 18-20.

Deemed "independent contractors," the drivers were required to procure their own trucks and operate them at their own expense.  Id. at 7 (requiring the drivers to bear all costs and expenses of operating the trucks, including maintenance, fuel, oil, tires, repairs, taxes, insurance, workers compensation

assessments, licenses, vehicle registration fees, and tolls).
The drivers were also required to mark their trucks and other
equipment with FedEx colors, logos, numbers, marks, and insignia
and wear a FedEx uniform.  Id. at 8, 12.  The drivers either
paid for these expenses out-of-pocket or they were deducted from
their weekly settlement payments.  For instance, to facilitate
the payment of licenses, taxes, and fees, the drivers authorized
FedEx to pay the charges on the drivers' behalf and then deduct
the expenses from their weekly settlement payments.  Id. at 7–8.
Drivers could elect to participate in a business support package
("BSP") through which FedEx provided the drivers with uniforms,
communications equipment, DOT inspections, equipment washing,
and drug tests to meet DOT requirements.  Most drivers
participated in the BSP and the cost was deducted from their
weekly settlement payments.  Id. at 24.  If a driver did not
elect to acquire the communications equipment necessary to
fulfill their obligations through the BSP, he was required to
purchase or lease it.  Id. at 12.

In addition to the BSP deduction, plaintiffs allege that
FedEx deducted the cost of deadhead,[3] work accident insurance,

---

[3] Deadhead insurance is insurance to cover a tractor when it's
operated without a load.  Great Am. Assurance. Co. v. Sanchuk,
LLC, 8:10-cv-2568-T-33AEP, 2012 WL 3112004, at *7 n.2 (M.D. Fla.

and cargo insurance, as well as the postage fees associated with
sending correspondence to the drivers.  Doc. Nos. 46 at 11-12;
46-3 at 10.

**B.    <u>Plaintiffs' Claims</u>**

Plaintiffs base the Deduction Claim on N.H. Rev. Stat. Ann.
§ 275:48 ("Deduction Statute"), which bars an employer from
withholding or diverting money from an employee's wages unless
one or more enumerated exceptions are satisfied.  Plaintiffs
argue that FedEx violated this provision by deducting charges
for items such as Department of Transportation inspections,
insurance, uniforms, communications equipment, and drug testing.

The Reimbursement Claim is based on N.H. Rev. Stat. Ann. §
275:57(I) ("Reimbursement Statute"), which provides:

> An employee who incurs expenses in connection with his
> or her employment and at the request of the employer,
> except those expenses normally borne by the employee
> as a precondition of employment, which are not paid
> for by wages, cash advance, or other means from the
> employer, shall be reimbursed for the payment of the
> expenses within 30 days of the presentation by the
> employee of proof of payment.

Plaintiffs argue that FedEx violated this provision by requiring
drivers to bear the cost of a variety of work-related items such
as the cost of owning and operating their trucks.

---

July 30, 2012).

To prevail on either claim a driver must be an "employee."
N.H. Rev. Stat. Ann. § 275:42 defines an employee as "every
person who may be permitted, required, or directed by an
employer, in consideration of direct or indirect gain or profit,
to engage in any employment . . . ."  It then provides several
exceptions, including a narrowly-defined independent contractor
exception.  Id.  The transferee court ruled that the plaintiffs
qualified as employees under this provision and were not covered
by the independent contractor exception because the exception
does not apply to a person who "'holds himself or herself out to
be in business for himself or herself.'"  In Re FedEx Ground
Package Syst., Inc., 758 F. Supp. 2d 638, 698 (N.D. Ind. 2010)
(quoting N.H. Rev. Stat. Ann. § 275:42II(e)).

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and that the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a).  The evidence submitted in support of the motion must be
considered in the light most favorable to the nonmoving party,
drawing all reasonable inferences in its favor.  See Navarro v.
Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

7

A party seeking summary judgment must first identify the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A material fact "is one 'that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  If the moving party satisfies this burden, the nonmoving party must then "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.  On cross motions for summary judgment, the standard of review is applied to each motion separately.  See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

### III.  ANALYSIS

The principal issue raised by the present motions is whether the FAAAA preempts the Deduction and Reimbursement Claims.  Accordingly, I begin with the preemption issue.

**A.   Preemption**

The FAAAA has an express preemption provision, which reads: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). FedEx argues that both the Deduction Claim and the Reimbursement Claim are preempted by the FAAAA because the statutes on which the claims are based affect its brand communication practices in a way that is "related to" its pricing and services.

The FAAAA's preemption provision is modeled on a similar provision in the Airline Deregulation Act of 1978 ("ADA") and courts have analyzed both provisions in pari materia. Brown v. United Airlines, Inc., 720 F.3d 60, 65 (1st Cir. 2013). Because the Supreme Court and the First Circuit have construed the relevant terms in both statutes on multiple occasions, I first look to precedent for guidance and then apply the statute to the facts of the case to determine whether plaintiffs' claims are preempted.

1.   Precedent

The Supreme Court first dealt with ADA preemption in

_Morales v. Trans World Airlines, Inc._, 504 U.S. 374 (1992).   In
holding that state guidelines setting airline fare advertising
were preempted by the ADA, the court made several statements
that have guided its subsequent preemption jurisprudence under
the ADA and the FAAAA.  First, relying on both common usage and
a similarly worded preemption provision in the Employee
Retirement Income Security Act, the court noted that the use of
the phrase "relating to" in the preemption provision
"express[es] a broad preemptive purpose."  _Id._ at 383-84.  The
Court also considered and rejected both plaintiffs' argument
that ADA preemption applied only to provisions that directly set
airline rates, routes, or services and its contention that only
provisions that specifically targeted the airline industry were
subject to preemption.  _Id._ at 385-87.  At the same time, the
court was careful to note that "'[s]ome state actions may affect
[airline fares] in too tenuous, remote, or peripheral a manner'
to have preemptive effect."  _Id._ at 390 (quoting _Shaw v. Delta
Air Lines, Inc._, 463 U.S. 85, 100 n.21 (1983)).  Applying these
principles, the court determined that the fare advertising
guidelines were related to airline prices both because they
dictated how an airline could communicate rate information to
its customers and because "it is clear as an economic matter

10

that state regulations on fare advertising have the forbidden
significant effect upon fares."  Id. at 387-88.

Three years later, in American Airlines v. Wolens, 513 U.S.
219 (1995), the Court was required to determine whether the
ADA's preemption provision barred participants in American
Airlines' frequent flyer program from using a state consumer
protection statute and state contract law to recover damages
they suffered when American made retroactive changes to the
program.  Following its reasoning in Morales, the Court had
little difficulty in concluding that the consumer protection act
claim was preempted, but it determined that the plaintiffs could
proceed with their breach of contract claim because the
preemption provision did not bar a plaintiff from using state
contract law to force an airline to abide by its own agreements.
Id. at 226-27, 232.

In Rowe v. New Hampshire Motor Transport Ass'n, 552 U.S.
364 (1998), an association of transport carriers argued that
certain sections of Maine's Tobacco Delivery Law were preempted
by the FAAAA.  One of the challenged provisions prohibited
anyone other than a state-licensed retailer from accepting an
order for delivery of tobacco products and another required
retailers to use a specific form of "recipient-verification

service" when shipping tobacco products.  Id. at 368.  In determining that the provisions were preempted even though they targeted shippers rather than carriers, the Court reasoned that the provisions were preempted because they had the effect of regulating the services that carriers provide to their customers.  Id. at 373.

Earlier this year, the Court again confronted the issue of preemption under the FAAAA in Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct. 1769 (2013).  There, a vehicle owner brought suit against a towing company alleging that it had improperly stored and ultimately sold his vehicle in violation of state laws that regulate the storage and sale of towed vehicles.  Id. at 1775.  In holding that the state statutes were not preempted, the court noted that the FAAAA, unlike the ADA, only preempts claims that relate to price, routes, or services "with respect to the transportation of property."  Id. at 1778.  Adopting language from a dissent by Justice Scalia in an earlier case, the Court noted that this phrase "'massively limits the scope of preemption' ordered by the FAAAA."  Id. at 1778 (quoting Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 449 (2002) (Scalia, J., dissenting).  The Court then reasoned that the plaintiffs' claims were not preempted because the conduct on

which the claims were based occurred long after the vehicle was
towed, and, therefore, the claims did not relate to
transportation services.  Id. at 1779.

The First Circuit decision that speaks most directly to the
preemption question at issue here is DiFiore v. American
Airlines, Inc., 646 F.3d 81 (1st Cir. 2011).  In DiFiore, a
class of skycaps challenged American Airlines' curbside baggage
check fee, arguing that it was inconsistent with a Massachusetts
statute governing tips.[4]  In concluding that the tips law claim
was preempted by the ADA, the court distinguished the tips law
from other employee compensation laws that ordinarily would not
be preempted by noting that "the tips law has a direct
connection to air carrier prices and services and can fairly be
said to regulate both."  Id. at 87 (emphasis in original).  In
reaching this conclusion, the Court rejected American Airlines'
argument that a sufficient connection between a state law and a
motor carrier's prices, routes, or services can be established
merely by demonstrating that the law imposes costs on an airline
that could result in price increases.  Id. at 89.  Instead, the

---

[4]  The statute provided in pertinent part that "[n]o employer or
other person shall demand . . . or accept from any . . . service
employee . . . any payment or deduction from a tip or service
charge given to such . . . service employee. . . by a patron."
Id. at 84 (quoting Mass. Gen. Laws Ch. 149, § 152A(b).

Court based its ruling on the fact that the plaintiffs were using the tips law to directly attack a charge that American was attempting to impose on its customers for an airline service. Id.  Accordingly, the Court held that "the tips law as applied here directly regulates how an airline service is performed and how its price is displayed to customers - not merely how the airline behaves as an employer or a proprietor."  Id. at 88; see also Brown, 720 F.3d at 64  (applying DiFiore to common law claims challenging baggage handling fee).

**B.   Application**

The Supreme Court has never held that a state employee compensation statute is preempted by either the ADA or the FAAAA.  Moreover, DiFiore, the only First Circuit decision to do so, involved an effort to use an employee compensation statute to directly attack an airline's prices and services.  This case is obviously distinguishable from DiFiore because, unlike the Massachusetts tips law that was at issue in that case, the Deduction and Reimbursement Statutes have no direct connection to FedEx's prices, routes, or services.  Thus, to succeed with its preemption defense, FedEx must find some other way to demonstrate that plaintiffs' claims have a sufficient connection to its prices, routes, or services to warrant their preemption.

14

FedEx attempts to meet this challenge by first arguing that it does not need evidence to establish the required relationship between its prices and services and the plaintiffs' claims and because the connection can be established through the use of logic alone.  In simplified form, FedEx reasons that its branding strategy, which requires drivers to use the FedEx brand on their trucks and uniforms, obviously relates to the services the company provides.  It then asserts that the Deduction and Reimbursement Statutes relate to its branding strategy because it cannot continue to use the strategy unless it complies with both statutes.  It then follows as a matter of logic, FedEx claims, that if its branding strategy relates to its services and the Deduction and Reimbursement Statutes relate to its branding strategy, the statutes must also relate to its services in a way that requires preemption.

The fatal flaw in this argument is that it is based on a serious misreading of precedent.  FedEx rests its argument on a statement in the First Circuit's decision in Rowe, in which the court noted that evidence quantifying the cost of complying with a statute is not required if the court is able to discern "the logical effect that a particular scheme has on the delivery of services or the setting of rates. . . ."  448 F.3d at 80 n.14.

15

In making this statement, the court was not declaring that every state statute that can be tied to a motor carrier's prices, routes, or services through the use of logic is preempted. Instead, it was merely acknowledging the fact that evidence will not be required to establish a prohibited effect on prices, routes, or services if the prohibited effect can be discerned through the use of logic.

Almost all state laws that affect a motor carrier's transportation business will have the kind of logical relation to its prices or services that FedEx complains of in this case. Zoning laws limit the places where a carrier can locate its facilities.  Tax laws affect the cost of a carrier's operations. Traffic laws affect the number of deliveries that a driver can make in a day.  Wage and hour laws impact the conditions under which a carrier's employees can be made to work.  All of these laws have a logical relation to a carrier's prices and services because they either affect the way in which a carrier provides its services or they potentially impose costs on a carrier that could affect the prices it charges its customers.  Laws of this type, however, are not ordinarily subject to preemption.  See Dan's City, 133 S. Ct. at 1780 (noting that zoning regulations are not preempted); DiFiore, 646 F.3d at 89 (rejecting argument

that state laws that affect a carrier's costs are necessarily preempted).

As the Supreme Court recently noted in Dan's City, the FAAAA's preemption provision is targeted at "a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." 133 S. Ct. at 1780 (quoting Rowe, 522 U.S. at 372). This purpose is not served when the FAAAA is construed so broadly as to require the preemption of every employee compensation statute that has a logical connection to a carrier's prices, routes, or services. Thus, FedEx's argument from logic is not sufficient to justify its preemption defense.

FedEx argues in the alternative that the evidentiary record demonstrates that the Deduction and Restatement Statutes are related to its prices, routes, and services. The evidence FedEx relies on, however, supports only its argument that its branding strategy is an essential aspect of the services it provides to its customers. FedEx conceded at oral argument that it presented no evidence to suggest that either statute actually interfered with FedEx's pricing or services. Tr. 34-35. Moreover, this is not a case where I can rely on an

17

understanding of basic economics to substitute for evidence. See, e.g., Morales, 504 U.S. at 388 (noting that "it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares").  In fact, in the absence of evidence, basic economics suggests that, as in fact happened in this case,[5] FedEx should be able to comply with both statutes without changing either its prices or services merely by renegotiating its contracts with its drivers.

In summary, the record in this case demonstrates that the Deduction and Restatement Statutes are employee compensation statutes that have no direct connection to FedEx's prices, routes, or services.  Moreover, neither statute relates to FedEx's prices, routes, or services merely because FedEx must comply with both statutes if it chooses to bar its drivers from holding themselves out to be in business for themselves.

_____

[5]  On January 8, 2009, FedEx announced its intention to transition to a new contractor workforce model in New Hampshire effective June 1, 2009.  Doc. No. 51-5.  In exchange for payment, drivers would release claims against FedEx and agree to early termination of the OAs.  The announcement contained three sample Independent Service Provider ("ISP") agreements.  Under the new model, FedEx contracts with ISPs who act as corporate entities and employers (i.e. "John Smith, Inc.").  The contractors hire and supervise employees to meet the service objectives.  FedEx also offers an "optional brand promotion program" through which ISPs can get FedEx logos on their trucks and uniforms.

Finally, no evidence has been produced to support a claim that either statute actually affects FedEx's pricing or the services it provides to its customers.  Accordingly, any connection that exists between the Deduction and Reimbursement Statutes and FedEx's prices, routes, or services is simply too tenuous to warrant preemption.[6]  Accord Schwann v. FedEx Ground Package Sys., Inc., No. 11-11094-RGS, 2013 WL 3353776, at *4 (D. Mass. July 3, 2013) (rejecting preemption challenge to similar claims based on Massachusetts law); Martins v. 3PD, Inc., No. 11-11313-DPW, 2013 WL 1320454, at *12-13 (D. Mass. Mar. 28, 2013) (same).

---

[6] FedEx also argues that plaintiffs' claims are preempted to the extent that they seek compensation beyond that agreed upon in the OA because state law cannot "enlarge or enhance" transportation-related contracts.  Doc. No. 44-1 at 9.  This argument is based on dictum in Wolens in which the court explained its ruling that the ADA preempted a state consumer protection act claim but not a common law breach of contract claim by stating that "[t]his distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on stated laws or policies external to the agreement."  See 513 US at 232.  FedEx makes too much of this statement by failing to acknowledge that the Wolens court determined that the extra-contractual claim that was then before it was preempted because it was related to the airline's rates and services.  See id. at 228.  Wolens does not hold, and the text of the FAAAA's preemption provision would not permit, a cause of action that does not otherwise relate to a carrier's prices, routes, or services to be preempted merely because it seeks a determination that the carrier's contracts with its workers violate state employee compensation laws.

**B.**   **<u>Reimbursement Statute</u>**

The Reimbursement Statute requires an employer to reimburse an employee for certain expenses incurred by the employee within thirty days of presentment by the employee of proof of payment. To be covered under the statute, the expenses must be incurred "at the request of the employer." N.H. Rev. Stat. Ann. § 275:57(I). The statute, however, does not cover expenses that are "normally borne by the employee as a precondition of employment." <u>Id.</u> Nor does it cover expenses that are "paid for by wages, cash advance, or other means from the employer." <u>Id.</u>

Plaintiffs seek to recover for a variety of business-related expenses that they agreed to assume in the OA. Their theory is that FedEx asked them to assume the expenses in the OA, that the expenses are not of a type that are normally borne by an employee as a precondition of employment, and that the expenses are not otherwise "paid for" by FedEx. FedEx responds by claiming that the OA does not qualify as a "request" that the employee incur the expenses and that, in any event, the expenses were paid for by "other means" through the settlement payments that it made to the drivers pursuant to the OA.

I decline to resolve this issue at the present time because the matter has not been adequately briefed. If the OA is deemed

to be FedEx's request that the drivers assume the expenses, it would seem that FedEx's promise in the OA to make settlement payments to the drivers is the means by which FedEx agreed to compensate them for their acquiescence in FedEx's request. Thus, even if I accept plaintiffs' argument that the OA is a request to assume expenses, it would appear that the Reimbursement Statute does not cover the drivers' expenses because the settlement payments were the "other means" by which the drivers were compensated for incurring the expenses. Because, however, the parties have not adequately addressed this issue in their briefs, I deny both motions to the extent that they are addressed to the Reimbursement Claim without prejudice to either party's right to seek summary judgment again at a later time.

**C.**   **The Deduction Claim**

Plaintiffs move for summary judgment on their claim that FedEx violated the Deduction Statute by improperly withholding expenses from their wages.  Plaintiffs seek to recover four types of deductions:  (1) business support package deductions; (2) work accident and deadhead insurance deductions; (3) cargo insurance claim deductions; and (4) postage deductions.  Doc. No. 46 at 11-13.

The Deduction Statute bars employers from withholding wages from an employee unless the withholding is authorized by an exception recognized in the statute.  At the beginning of the class period, the statute provided in pertinent part that:

> No employer may withhold or divert any portion of an
> employee's wages unless: . . . (b) The employer has a
> written authorization by the employee for deductions
> for a lawful purpose accruing to the benefit of the
> employee as provided in regulations issued by the
> commissioner.

N.H. Rev. Stat. Ann. § 275:48 (2002).  In 2004 and 2005, the statute was amended to add exceptions to the general prohibition on deductions that are not relevant to the current dispute.  In 2007, the statute was amended again to include several additional exceptions that had previously been included in the regulations adopted to implement the statute.  Plaintiffs argue that they are entitled to partial summary judgment on the Deduction Claim because the deductions that were made by FedEx during the class period were not authorized under the statute.

FedEx does not argue that any of the deductions at issue here were expressly authorized by any version of the Deductions Statute that was in effect during the class period.  Nor does it contend that the deductions were expressly authorized by the statute's implementing regulations.  Instead, it cites what it argues is a clarifying amendment to the statute that was enacted

after the class period ended and argues that the amendment makes
it clear that the deductions were authorized by implication
under earlier versions of the statute.  That amendment, which
was adopted in 2011, adds to the list of deductions permitted
under the statute deductions that are made:

> For any purpose on which the employer and employee
> mutually agree that does not grant financial advantage
> to the employer, when the employee has given his or
> her written authorization and deductions are duly
> recorded.

N.H. Rev. Stat. Ann. § 275:48 I (b)(12)(2011).

I reject FedEx's argument.  Although FedEx claims that the
2011 amendment clarifies earlier versions of the Deduction
Statute, it has failed to identify any ambiguous statutory text
that the amendment was intended to clarify.  The statute itself
is quite clear in specifying that deductions are not permitted
unless they are authorized by the statute itself or in
regulations issued by the Department of Labor.  FedEx does not
point to any statutory exceptions to the general prohibition on
deductions that the 2011 amendment was intended to clarify.  Nor
does it explain how the 2011 amendment could have clarified the
statute's implementing regulations.

FedEx also invokes Lab 803.03(b) to support its argument
that the Deduction Statute must be construed to authorize

23

deductions even if they are not expressly authorized in the statute or its implementing regulations.  Lab 803.03(b) bars an employer from requiring an employee or an applicant for employment to "pay" for "the cost of a medical examination, non-required drug or alcohol testing, records required by the employer, or any item required by and for the benefit of the employer."  FedEx notes that neither the statute nor the regulations authorize deductions for the kind of expenses covered by Lab 803.03(b).  It then reasons that the statute must authorize deductions that are not expressly exempted from the general prohibition on deductions because otherwise Lab 803.03(b) would be superfluous.  I reject this argument for two reasons.  First, it is by no means clear that Lab 803.03(b) would be superfluous unless the Deduction Statute is read to authorize deductions that are not expressly exempted.  Lab 803.03(b) is a limitation on an employer's ability to require any employee to "pay" for certain business-related expenses.  It does not apply only to deductions.  Thus, it would not be superfluous if the statute is construed authorize only deductions that are expressly exempted.  Second, the construction of the statute that FedEx proposes is inconsistent with the statute's text, which plainly establishes a general

24

prohibition on deductions unless they are authorized in the statute itself or the regulations implementing the statute.  I decline to adopt an interpretation of the statute that is contrary to its plain meaning even if it would render a regulatory interpretation of that statute superfluous.

Because I am unpersuaded by FedEx's claim that the 2011 amendment was intended merely to clarify the law as it existed during the class period, and FedEx has failed to offer any other persuasive argument that the plaintiffs' motion should not be granted, I determine that plaintiffs are entitled to partial summary judgment with respect to the Deduction Claim.[7]

## V.  CONCLUSION

Finding that plaintiffs' claims are not preempted by the FAAAA, I deny FedEx's motion for summary judgment (Doc. No. 44) to the extent that it is based on preemption; grant the

---

[7] To the extent that FedEx claims that the 2011 amendment should apply retroactively, it does so only in a conclusory fashion that does not require independent analysis.  See Doc. No. 53 at 21.  In any event, it appears likely that any attempt to apply the 2011 amendment to conduct that occurred prior to its adoption would be unlikely to survive a challenge based on the New Hampshire Constitution's prohibition on retrospective legislation.  See, e.g., Maplevale Builders, LLC v. Danville, No. 2012-485, 2013 WL 2451499, at *5 (June 5, 2013) (describing constitutional prohibition on retrospective legislation).

plaintiffs' motion for partial summary judgment (Doc. No. 39) on

their illegal deductions claim (Count II); and deny both

parties' motions for summary judgment on plaintiffs'

reimbursement claim (Count VIII) without prejudice.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 21, 2013

cc:  Susan E. Ellingstad, Esq.
     Jordan M. Lewis, Esq.
     Edward K. O'Brien, Esq.
     Jozef Kopchick, Esq.
     Kenneth Sansom, Esq.
     Leann M. Walsh, Esq.
     James C. Rehnquist, Esq.
     Lucy J. Karl, Esq.

26