UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Robert GENNELL, Jr., *et al.*,

                Plaintiffs,                      CASE NO. 1:05-CV-00145 (PB)

v.

FEDEX CORPORATION; FEDEX GROUND
PACKAGE SYSTEM, INC.; and FEDEX HOME
DELIVERY (a division thereof),

                Defendants.
_____/

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR RENEWED MOTION FOR
PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO FEDEX GROUND PACKAGE
SYSTEM INC's RENEWED MOTION FOR SUMMARY JUDGMENT**

## I.    Introduction

In their opening brief, plaintiffs - aided by the Court's questions and analysis

concerning the first wave of summary judgment motions filed early this year –

demonstrated (a) that they have satisfied all the elements of N.H. Stat. Rev. § 275:57 and,

accordingly, (b) are entitled to an Order declaring that their (1) truck leases and purchases

(2) fuel expenses and (3) truck maintenance expenses must be reimbursed pursuant to the

statute.  In response, defendants (hereafter collectively referred to as "FedEx") make two

main arguments.

FedEx's *first* main argument focuses on one of the two (of six) elements of § 275:57

that are in dispute. FedEx argues that the statute's fourth element, which excludes from

liability "those expenses normally borne by the employee as a precondition of

employment" must mean – because of the use of the article "the" before the word

"employee" – that the Court can only look at the plaintiffs themselves to determine if the

expenses they paid were a "precondition of employment." Since – continues FedEx's argument – the plaintiffs bore those expenses as a precondition of their work at FedEx, they cannot recover them under the statute.

The critical problem with this argument is that it purposefully ignores the statute's use of the word "normally." As FedEx concedes, the presence of the word changes the meaning of this phrase, creating a comparator.  This dovetails precisely with plaintiffs' view. The use of the word "normally" does create a comparator, and the appropriate comparison is – in FedEx's own words – "the employer's treatment of other, similarly situated employees" – namely, the employee drivers who work for FedEx Express.  Because the FedEx Express drivers do not pay for their trucks, fuel or maintenance "as a precondition of employment," the statute's exception does not apply.

*Second,* FedEx argues that plaintiffs have already been paid for their truck-related expenses and thus any recovery would be an unjustified windfall. This is proven, according to FedEx, by comparing the drivers' rate of pay with other employee drivers in New Hampshire during the same period.

There are two central problems with this argument. The first is that plaintiffs' rate of pay – how much and for what – is spelled out by contract, here known as the Operating Agreement.  No cited – or known – rule of contract construction permits the Court to examine the rate and structure of payment of *other drivers* working for *other companies* to determine FedEx's contractual obligations under the Operating Agreement. The second problem is that – even if the Court could consider the rate and structure of pay to other drivers working for other companies – FedEx has cherry-picked the comparison, ignoring the most obvious analogue, which is its own employee drivers working for FedEx Express.

FedEx's legal arguments fail, and it has offered no contested facts that would otherwise preclude summary adjudication. This Court has all it needs to grant plaintiffs' summary judgment motion.

## II.   THE MOTION RECAPPED

To recap, plaintiffs' motion seeks an order from the Court finding that the cost of their truck (either by lease or purchase); their fuel purchases; and their truck maintenance expenses are recoverable under N.H. Rev. Stat. § 275:57. The first of the statute's five paragraphs is at issue. It reads:

> An employee who incurs expenses in connection with his or her employment and at the request of the employer, except those expenses normally borne by the employee as a precondition of employment, which are not paid for by wages, cash advance, or other means from the employer, shall be reimbursed for the payment of the expenses within 30 days of the presentation by the employee of proof of payment.

In their opening brief, and consistent with a suggestion by the Court at argument, plaintiffs broke the statute down to its six constituent elements. They are:

1) An employee
2) who incurs expenses in connection with his or her employment
3) and at the request of the employer,
4) except those expenses normally borne by the employee as a precondition of employment,
5) which are not paid for by wages, cash advance, or other means from the employer,
6) shall be reimbursed for the payment of the expenses within 30 days of the presentation by the employee of proof of payment.[1]

FedEx's brief focuses only on elements 4 and 5. It does not discuss, and thus concedes, that plaintiffs have satisfied elements 1-3 and 6. Accordingly, plaintiffs here will

---

[1] Plaintiffs' 10/10/2013 Br. at 9-20.

only discuss the two elements, numbers 4 and 5 above, that remain in controversy.

### III.   SUMMARY JUDGMENT STANDARD

At this point, it makes sense to recall the shifting burdens that apply to summary

judgment motions.  More specifically:

> [w]hen a motion for summary judgment is properly supported, the burden shifts to the nonmovant to show that a genuine issue exists. *Donovan v. Agnew,* 712 F.2d 1509, 1516 (1st Cir.1983). If the nonmovant fails to offer sufficient factual support to counter the movant's proffer on an element for which the nonmovant bears the burden of proof at trial, all other factual issues become immaterial, and the movant is entitled to summary judgment.  *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 12 (1st Cir.1994), *petition for cert. filed,* (Feb. 21, 1995).[2]

Plaintiffs have excerpted the language above because, as discussed in detail below,

FedEx has failed to satisfy its shifted burden.  Rather than present contested material facts,

FedEx relies on its view of "basic economics."[3] This is exactly the approach FedEx

employed in its last round of summary judgment briefing, though then the issue was

federal preemption.  In response, the Court observed that, whatever FedEx's understanding

of economics, "this is not a case where I can rely on an understanding of basic economics to

substitute for evidence."[4] That was true in connection with FedEx's preemption argument,

and it remains true in connection with FedEx's § 275:57 argument. In the absence of actual

evidence, FedEx fails to sustain its summary judgment burden.

---

[2] *St. Hilaire v. City of Laconia*, 885 F. Supp. 349, 353 (D.N.H.), *aff'd*, 71 F.3d 20 (1st Cir. 1995), *cert. denied*, 518 U.S. 1017 (1996).
[3] FedEx 11/8/2013 Br. at 16.
[4] *Gennell v. FedEx*, 2013 WL 4854362, *7 (D.N.H. Sept. 10, 2013).

**IV.    ARGUMENT**

**A.    Plaintiffs satisfy the elements of N.H. Rev. § 275:57**

**1.    First disputed element:    *"except those expenses normally borne by the employee as a precondition of employment…"***

    a.    Summary of argument

In their opening brief, plaintiffs pointed out that the most obvious application of this phrase in this case's context – where the subject "employee" is one as a matter of law – was to compare the subject's employee's circumstances with those FedEx employees who were correctly classified. That interpretation permitted the Court to apply natural meanings to the word "normally" – which indicates that the employee's expense obligation is to be compared with others – and the word "the," which indicates that the comparison must be to FedEx's employees. That interpretation led the analysis to consider FedEx Express employee drivers, who do not pay for their truck, their fuel, or their fuel expenses as a precondition of their employment. Thus, by comparing plaintiffs to FedEx Express drivers, this exception does not apply in this circumstance.[5]

    b.    FedEx concedes the point

FedEx's main argument here is to focus only on the word "the." Argues FedEx: "The use of the definite article 'the' indicates that the legislature intended for this exception to refer to the employee actually seeking reimbursement under § 275:57."[6] Thus – continues FedEx's argument – since plaintiffs bore those expenses as a precondition of their work at FedEx, they cannot recover them under the statute.

The critical problem with this argument is that it purposefully ignores the statute's

---

[5] Plaintiffs' 10/10/2013 Br. at 10-13.
[6] FedEx 11/8/2013 Br. at 17-18.

use of the word "normally." This word creates a comparator, and makes no sense if the Court only looks to the plaintiffs themselves to determine if they are seeking to recover expenses that they carried as a condition of employment. FedEx's only attempt to reconcile the statute's use of the words "normally" and "the" is hidden away in footnote 10 on its page 19, where it concedes:

> To the extent that the word "normally" creates a comparator ... a comparison can be made to either the employer's course of dealing with the employee in question, or to the employer's treatment of other, similarly-situated employees.

Here, FedEx has it right. The use of the word "normally" <u>does</u> create a comparator, and the appropriate comparison is – in FedEx's own words – "the employer's treatment of other, similarly situated employees" – namely, the employee drivers who work for FedEx Express.  As plaintiffs pointed out in their opening brief, these employee drivers do not pay for their trucks, their fuel, or their maintenance, and FedEx has done nothing in response to contest that.  Thus, consistent with how FedEx acknowledges the statute must be interpreted, the correct comparison is FedEx Express employee drivers. Because the FedEx Express drivers do not pay for their trucks, fuel or maintenance "as a precondition of employment," the statute's exception does not apply.

The failure of FedEx's argument is demonstrated by this point: Under its formulation of this element of § 275:57, a misclassified employee – that is, a person who was improperly classified as an independent contractor – could <u>never</u> recover under this statute because she always bore expenses as a "precondition" of her work (not employment). If the Legislature had intended to exclude misclassified employees from the reach of this statute, then the statute would so state. It does not.

**2.**      **Second disputed element:** *"which are not paid for by wages, cash advance, or other means from the employer."*

   a. Summary of argument

In their opening brief, plaintiffs focused on the language of the Operating

Agreement, which is crystal clear:

> Contractor agrees to bear all costs and expenses incidental to operation of Equipment, whether empty or loaded, including, without limitation, all risks of depreciation, all maintenance (including cleaning and washing), fuel, oil, tires, repairs, business taxes, consumption and sales taxes, personal property taxes, ad valorem taxes, fuel and road-use taxes, ton-mile taxes, insurance coverage as provided herein, workers compensation assessments, licenses, vehicle registration renewal fees, base plates, and all highway, bridge and ferry tolls).[7]

This unqualified language of the Operating Agreement makes it clear that truck-

related expenses (purchase or lease, fuel and maintenance) are not covered by FedEx's

payment. Instead, drivers bear these costs, which means this second statutory exception to

liability does not apply to plaintiffs' claims.

In response, FedEx largely skirts the language of the Operating Agreement, though

in its "Statement of Undisputed Material Facts"  agrees that "[u]nder the [Operating

Agreement], Plaintiffs agreed to provide their own delivery vehicles, to bear all costs and

expenses incidental to operation of the vehicles, and to bear the cost of package delivery

scanners."[8]

Notwithstanding that concession – that plaintiffs paid for their trucks and costs

associated with their trucks – FedEx argues that "[a]s a matter of basic economics,

---

[7] **Lewis 10/10/2013 Decl., Ex. A, at ¶ 1.3.**
[8] FedEx 11/8/2013 Br. at 2.

[p]laintiffs' argument is baseless"[9] because FedEx has located statistics that show that, compared with other New Hampshire employee drivers, "[p]laintiffs' gross income was well above the market rate for employee delivery drivers."[10] This argument fails, for two fundamental reasons.

           b.    **Evidence of what others drivers were paid is irrelevant to interpreting the contract between FedEx and plaintiffs**

FedEx acknowledges, as it must, that "[d]uring the time that [p]laintiffs performed pickup and delivery services for [FedEx], their relationship with [FedEx] was governed by a contract called the Operating Agreement."[11]  The essence of FedEx's argument is that payment terms – generally the critical focus of any contract, and certainly at the heart of the FedEx Operating Agreement – can be determined not by the language found in the contract, but by comparing plaintiffs' payment to what other companies paid their employee drivers at the same time. This sort of analysis goes beyond any rule of contract construction, and FedEx cites no case, rule or law suggesting otherwise.

In sum, what plaintiffs were paid for is a matter of contract interpretation.  Familiar rules apply:

> When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. We give an agreement the meaning intended by the parties when they wrote it. Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract.[12]

---

[9] FedEx 11/8/2013 Br. at 16.
[10] *Id.* at 12.
[11] *Id.* at 9-10.
[12] *Birch Broadcasting, Inc. v. Capitol Broadcasting Corporation, Inc.*, 161 N.H. 192,  196, 13 A.3d 224, 228 (N.H. 2010)(internal quote marks and citations omitted).

The Operating Agreement's language, quoted above, leaves no room for doubt: The plaintiffs alone were financially responsible to acquire, maintain and fuel their trucks. This is so far beyond dispute that FedEx acknowledges it in its Statement of Undisputed Facts[13] and this Court so held in its summary judgment decision in September:

> Deemed "independent contractors," the drivers were required to procure their own trucks and operate them at their own expense. ... (requiring the drivers to bear all costs and expenses of operating the trucks, including maintenance, fuel, oil, tires, repairs, taxes, insurance, workers compensation assessments, licenses, vehicle registration fees, and tolls).[14]

In its brief, FedEx seeks to introduce snippets of testimony, both from a few plaintiffs and a few FedEx executives,[15] as to what Operating Agreement's payment provisions mean. This subjective understanding is not relevant to the Court's analysis, for two reasons. First, the meaning of the Operating Agreement is clear on its face. Second, if the language is found to be ambiguous, its meaning "must be determined, under an objective standard, what the parties, as reasonable people, mutually understood the ambiguous language to mean."[16]

The evidence that FedEx seeks to introduce – the rate of payment of drivers from other companies – is extrinsic evidence. That type of evidence does not come in unless there is a finding that the contract is ambiguous, in which case the meaning of the contract must be established by the factfinder: "When a trial court properly looks to extrinsic evidence to determine the intent of the parties, the question of a contract term's meaning

---

[13] FedEx 11/8/2013 Br. at 2 ("[u]nder the [Operating Agreement], Plaintiffs agreed to provide their own delivery vehicles, to bear all costs and expenses incidental to operation of the vehicles, and to bear the cost of package delivery scanners.").

[14] *Gennell v. FedEx Ground Package System, Inc.*, 2013 WL 4854362, *2 (D.N.H. Sept. 10, 2013).

[15] FedEx 11/10/2013 Br. at 10-11.

[16] *Birch Broadcasting*, 161 N.H. at 196, 13 A.3d at 228.

should be left to the trier of fact unless the meaning of the extrinsic evidence is so clear that

unreasonable people could reach only one conclusion."

But not all types of extrinsic evidence are admissible when interpreting contracts:

> In descending order of importance, extrinsic evidence may
> include: (1) the parties' negotiations on the particular loan, (2)
> their course of performance, (3) their prior course of dealing,
> *see id.;* and (4) trade usage in the relevant … industry… [17]

FedEx might be unable to resist arguing that its summary of how other drivers were

paid by their employers constitutes "trade usage in the relevant … industry" and is thus

admissible as extrinsic evidence. But there is no support for this argument, assuming it is

made.  "Trade usage in the relevant … industry" usually refers to technical contract terms

that are generally outside common knowledge.[18]  FedEx points to no contested technical

term; instead it relies on this extrinsic evidence to support its view of the "basic

economics."

Finally, there is the Operating Agreement's Van Availability Settlement and Daily

Mileage Supplement, which both parties have cited to support their respective positions.

Plaintiffs' position is detailed in their opening brief[19] and does not require repeating here.

And to the extent that there is any real doubt as to the meaning of the Van Availability

Supplement and Daily Mileage Supplement – both of which specifically say that they

compensate drivers' services - that doubt is erased by the Operating Agreement's specific

---

[17] *Den Norske Bank As v. First National Bank of Boston*, 75 F.3d 49, 52-53 (1st Cir.
1996)(citations omitted).
[18] *E.g., Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003), *cert.
denied*, 543 U.S. 871 (2004)("As an example of what it meant by use of extrinsic evidence to
interpret the words in a contract, *Pacific Gas* pointed out that evidence of trade usage or
custom has been admitted to show that the term 'United Kingdom' in a motion picture
distribution contract included Ireland.").
[19] Plaintiffs'10/10/2013 Br. at 15-16.

and unqualified ¶ 1.3 (quoted above).[20]

In sum, FedEx's argument – that plaintiffs' compensation can be determined by reference to what other companies pay their drivers – only comes in if:

- there is a finding that the Operating Agreement is ambiguous
- in which case there must be a trial,
- which itself defeats FedEx's motion for summary judgment.

And even if the analysis goes that far, there is no precedent for the consideration of what other drivers are paid to determine how plaintiffs are paid.  In *Estrada v. FedEx Ground Package System, Inc.*[21] FedEx made the same argument – that its compensation paid drivers for their truck-related expenses notwithstanding the unqualified language in the Operating Agreement – and the claim was rejected: "FedEx's suggestion that the settlement formula is keyed to specific expenses and, as such, includes reimbursement for those expenses, is not supported by any evidence."[22]  FedEx claims now that Estrada should be distinguished because it "presents several forms of undisputed evidence…"[23] But the subjective testimony and the drivers' survey cannot be considered, and the Operating Agreement plainly and clearly provides that FedEx's payments do not cover truck-related expenses.

      c.    FedEx's comparison fails to consider overtime and ignores FedEx Express employee drivers

The payment rates of other employee drivers working for other companies is, as explained above, extrinsic evidence that is not considered in interpreting FedEx's Operating Agreement. But even if it is considered, it is inadequate to satisfy FedEx's

---

[20] *E.g., Chadwick v. C.S.I., Ltd.*, 137 N.H. 515, 525, 629 A.2d 820, 827 (N.H. 1993)("[W]e interpret the terms of a contract by considering the contract as a whole..").
[21] 154 Cal. App. 4th 1, 64 Cal Rptr.3d 327 (Cal. Ct. App. 2007).
[22] *Id.* at 15, 64 Cal. Rptr.3d at 339.
[23] FedEx 11/8/2013 Br. at 17.

summary judgment burden at this stage. The evidence has at least three significant gaps.

First, the drivers' wages against whom FedEx compares plaintiffs' payments do not include either overtime or the value of employee benefits, a detail FedEx concedes only in footnote 6 on page 12 of its brief.  If those drivers were paid either, or both, overtime or benefits, the value of their wages would radically improve.

Second, FedEx has intentionally taken those statistics that combine all types of drivers from a variety of industries that have significant differences in pay. On a national level, the Bureau of Labor Statistics identified five industries with the highest concentration of light truck/delivery service drivers, and for drivers in the "courier and express delivery services" industry – the industry of which plaintiffs are a part – the annual mean wage was $53,710.[24]  While the New Hampshire statistics do no provide a breakdown of wages by industry, the national industry breakdown nonetheless provides a more apt comparison, and more nearly approximates what the eight test plaintiffs earned while at FedEx.

Finally, FedEx does not account for the average wages of its FedEx Express drivers. But according to plaintiffs' MDL expert, during the relevant period, FedEx Express drivers averaged $57,797 in "reasonable compensation" between 2002-06,[25] an amount in-line with the average of the eight test plaintiffs.

The point here is that FedEx's statistics, even if they are considered, do nothing to advance FedEx's arguments and do not satisfy its Rule 56 summary judgment burden.

**B.  FedEx's other arguments and exaggerations do not satisfy its Rule 56 burden**

Throughout its 25-page brief, FedEx makes certain arguments and otherwise exaggerates or takes liberties with the record and with the substance of plaintiffs'

---

[24] http://www.bls.gov/oes/current/oes533033.htm#nat.
[25] **Lewis Reply Decl. at Ex. A.**

positions.  These contentions, while minor, warrant comment and correction.

### 1.    FedEx misstates testimony to support its claimed "Undisputed Material Facts"

In paragraph 11 of FedEx's "Statement of Undisputed Material Facts" section,  FedEx asserts that "[p]laintiffs understood that FXG paid them the Van Availability Settlement as revenue for their vehicle expenses."[26] As discussed above, because the Operating Agreement is to be construed on an objective basis, the subjective understanding of "plaintiffs" is not relevant. But, worse, the language quoted by FedEx from three drivers to support the "statement" does not come close to the mark claimed by FedEx.[27]

### 2.    FedEx misstates plaintiffs' claim to support its other arguments

FedEx repeatedly characterizes plaintiffs' claim as an attempt to "creat[e] a boundless right"[28] or something equivalent.[29]  These represent FedEx's attempt to radically misstate the nature of plaintiffs' argument. (This attempt then is used by FedEx to justify its federalism argument.[30])  Along the same lines, FedEx concludes that "[a]n employer ... should not be required to divine a statewide or industry norm to determine whether its own employees can bear their expenses as a precondition of employment."[31]

As explained above, plaintiffs do nothing more than to literally interpret the statute

---

[26] FedEx 11/8/2013 Br. at 4.

[27] Bills: "FedEx used to pay us that amount ... every day that our van was available for work, which was every day;" Gennell: "Van availability. That was the days that I made my truck available to work, and they paid us $45 a day;" Robinson: "Any day there was a vehicle on the road, you would get the van availability."

[28] FedEx 11/8/2013 Br. at 1.

[29] *Id.* at 8 ("If the legislature intended to create a broad new right..."); *id.* at 18 ("An employer seeking to comply with New Hampshire law should not be required to divine a statewide or industry norm to determine whether its own employees can bear their expenses as a precondition of employment.");

[30] *Id.* at 8-9.

[31] *Id.* at 18.

and apply it against the facts presented.  Plaintiffs' claim does not ask an employer to "divine" anyone else's intentions, only its own.  Where an employer has a practice to cover certain employee expenses, that employer's practices – alone – will be at issue. Ironically, despite FedEx's complaint, it is FedEx, not plaintiffs, that seeks to introduce evidence of what other employers paid their employees to interpret its own contract.

### 3. FedEx's resort to legislative history is based on false premises

FedEx attempts to finesse the requirement that a statute must be ambiguous before its legislative history may be considered by offering this: "Courts also review legislative history where more than one reasonable interpretation of the statutory language exists."[32] That language – which FedEx posits as different than describing an ambiguity – in fact is a perfect definition of ambiguity: "The language of a contract is ambiguous if the parties to the contract could reasonably disagree as to the meaning of that language."[33] The New Hampshire Supreme Court is crystal clear as to the limits of legislative history: "If a statute is ambiguous, however, we consider legislative history to aid our analysis."[34]

Thus, even under FedEx's logic, it does not get to consider legislative history until it demonstrates that there is something ambiguous about the statute it wants to construe. It has not done so.

### 4. FedEx's "federalism" argument is based on false premises

FedEx suggests that principles of federalism are implicated by plaintiffs' argument, asserting that plaintiffs "ignore … principles of federalism."[35] This remarkable claim is

---

[32] *Id.* at 8 (internal quotes and citation omitted).
[33] *Birch Broadcasting, Inc. v. Capitol Broadcasting Corp.*, 161 N.H. 192, 196, 13 A.3d 224, 228 (N.H. 2010).
[34] *State v. Spade*, 161 N.H. 248, 251, 13 A.3d 855, 858 (N.H. 2010).
[35] FedEx 11/8/2013 Br. at 8.

premised entirely on FedEx's exaggeration of plaintiffs' argument.[36] Plaintiffs do nothing more than ask the Court to interpret the statute to recognize the claim created by the state Legislature. Principles of federalism are not implicated by this motion.[37]

### 5.    FedEx's "answer" to the Court's hypothetical begs the question

On page 22 of its brief, FedEx returns to one of the Court's posed hypotheticals – where an employee agreed to purchase a laptop in exchange for an increase in compensation – and then concludes: "[T]hat is precisely the scenario that the Court faces here - Plaintiffs agreed to bear their own expenses and, in turn, received increased compensation ..."  The problem: FedEx's "proof" – what other employers paid their drivers – cannot be considered when interpreting FedEx's Operating Agreement and, just as fatally, even a cursory review of FedEx's survey shows its presentation is flawed and nearly meaningless.

### 6.    FedEx offers nonsensical non-sequiturs in support of its argument that the drivers were paid for truck expenses notwithstanding the unambiguous language in the Operating Agreement

FedEx, in contending that it paid drivers for their truck-related expenses – notwithstanding its clear language to the contrary – finds "support" in its review of its "Sourcing Guide," which plaintiffs introduced in their opening brief. FedEx asserts: "Even the documents Plaintiffs rely on confirm that [FedEx] structured the settlement to enable

---

[36] *Id.* at 9 ("This Court should be especially hesitant to create the new right urged by Plaintiffs here...").

[37] *E.g., U.S. v. Jones*, 415 F.3d 256, 265 (2nd Cir. 2005)(" [T]he 'principles of federalism and comity embodied in the full faith and credit statute are not endangered when a sentencing court, not questioning the propriety of the state's determination in any way, interprets how to apply New York's youthful offender adjudications to a Guidelines analysis....")(citation omitted).

drivers to earn a profit after expenses."[38] This cannot possibly be surprising – FedEx would never solicit new drivers by calculating that they would lose money if they drove for FedEx – and is irrelevant. The issue is not whether the drivers netted a profit. The issue is whether FedEx's payments to drivers covered their truck-related expenses.  The Operating Agreement makes it clear that the payments do not cover those expenses.

### 7. FedEx misstates the record in its opposition to the FedEx Express comparison

FedEx argues that the plaintiffs' comparison to FedEx Express drivers fails because, it claims, "the facts … are inadmissible or unsupported by any record evidence."[39] The *best* that argument would get FedEx – if it was true – is a trial on the issue of whether FedEx Express drivers pay for their truck-related expenses. But it's not true. Plaintiffs attached to their opening brief the report of their expert Frances McCloskey, who both made the comparison and attached to her report the source documents from which she worked. Thus, the facts are before this Court.  Moreover, as FedEx must acknowledge, the common features between FedEx Express drivers and plaintiffs *can* be the subject of expert testimony.[40]

## V.   CONCLUSION

In plaintiffs' opening brief, they showed that FedEx enjoyed a windfall by (a)

---

[38] FedEx 11/8/2013 Br. at 11.

[39] *Id.* at 20 n.11.

[40] *See Wells v. FedEx Ground Package Sys.*, 2013 WL 5436608, *8 (E.D. Mo. Sept. 27, 2013)("In these reports, FedEx contends Miller offers … completely new opinions: (1) that the duties of  'FedEx Express couriers' are 'very similar' to those of FedEx pick up and delivery drivers; (2) that the job description of a 'Pay Code 8KCourier' employee at Express, 'fits most closely with that of a FedEx Ground delivery driver' …  Here, Miller's reports are based on discovery Plaintiffs received regarding Express and Freight drivers that was not previously available to them due, in part, to FedEx's actions …  Under these circumstances, the Court finds the supplemental reports are not untimely.").

improperly classifying its drivers and, when a court concluded that misclassification had

occurred, (b) still refused to reimburse those drivers for expenses that are ordinarily the

responsibility of an employer.  That remains true. But plaintiffs' argument does not rest on

equity.  Plaintiffs ask only that the Court apply conventional, orthodox rules of construction

– both to interpret N.H. Stat. Rev. § 275:57 and FedEx's Operating Agreement.  Plaintiffs'

claim relies only on simple grammatical analysis, aided by well-established interpretive

rules.  Plaintiffs' have satisfied their requirements under Rule 56, and their arguments are

not rebutted. They are entitled to a declaration that their truck expenses – purchase and/or

lease; fuel; and maintenance – are recoverable under § 275:57.

Dated: November 22, 2013.

By: */s/ Jordan M. Lewis*
Jordan M. Lewis, Esquire *(pro hac vice)*
**Kelley Uustal, PLC**
700 S. E. 3rd Avenue, Suite 300
Fort Lauderdale, Florida 33316
Telephone: (954) 522-6601
Facsimile:  (954) 522-6608
Email:      jml@kulaw.com

-and-

Edward O'Brien (NH Bar No: 2866)
**O'BRIEN LAW FIRM, PC**
One Sundial Avenue, Fifth Floor
Manchester, New Hampshire 03103
Telephone:    (603) 672-3800
Email:             eobrien@star.net

-and-

Susan Ellingstad, Esquire *(pro hac vice)*
**Lockridge Grindal Nauen, PLLP**
100 Washington Avenue S,  Suite 2200
Minneapolis, MN 55401
Telephone:    (612) 339-6900
Email:             seellingstad@locklaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that the true and correct copy of the foregoing has been

furnished via CM/ECF Electronic Notification this 22nd day of November, 2013 to the

following:

James Rehnquist, Esquire
Goodwin Proctor
Exchange Place
53 State Street
Boston, MA 02109
jrehnquist@goodwinproctor.com


Lucy Karl, Esquire
Shaheen & Gordon, P.A.
107 Storrs Street
Concord, NH 033020
lkarl@shaheengordon.com


                                        /s/ Jordan M. Lewis
                                        Jordan M. Lewis, Esquire *(pro hac vice)*