UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Robert Gennell, Jr., et al.**

   **v.**                          Case No. 05-cv-145-PB
                                    Opinion No. 2014 DNH 056
**FedEx Corp., et al.**


### MEMORANDUM AND ORDER


The plaintiffs in this long-running dispute are a class of drivers based in New Hampshire who worked for defendant FedEx Ground Package System, Inc. ("FedEx").[1]  Plaintiffs claim, among other things, that they are entitled to be reimbursed for work-related expenses pursuant to section 275:57(I) of the New Hampshire Revised Statutes.  This Memorandum and Order resolves the parties' cross-motions for summary judgment addressing the drivers' reimbursement claim.


### I.    BACKGROUND

In a prior order, I described the relationship between FedEx and its drivers as it existed during the class period.  See Gennell v. FedEx Ground Package Sys., Inc., 2013 DNH 110, 2-

---

[1] FedEx Ground Package System, Inc. is a subsidiary of FedEx Corporation.  Some of the drivers that comprise the class worked for FedEx Home Delivery, a division of FedEx Ground.

6.  As relevant here, each driver entered into a standard-form "Operating Agreement" ("OA") with FedEx.  See Doc. No. 80-1. The OA requires each driver to purchase and bear "all costs and expenses incidental to operation" of their delivery vehicles, including the cost of fuel, maintenance, insurance, taxes, tolls, licenses, and other work-related expenses.  Id.

The drivers agreed to the terms of the OA in order to obtain:

> the advantage of operating within a system that will provide access to national accounts and the benefits of added revenues associated with shipments picked up and delivered by other contractors throughout the FedEx Ground system.  In order to get that advantage, [the driver] is willing to commit to provide daily pick-up and delivery service, and to conduct his/her business so that it can be identified as being part of the FedEx Ground system.

Id.  FedEx paid each driver a weekly "settlement" payment "for services provided" pursuant to the OA.  Id.  A driver's total weekly settlement payment was calculated according to a formula that included individual payments for stops made; for packages handled; for each day that a qualified, uniformed driver provided a clean, properly maintained vehicle; for each day that a driver picked up and delivered packages in a sparsely populated area; for each day that a driver participated in FedEx's "Flex Program"; for each mile driven each day in excess

of 200 miles; and for each mile driven when the fuel price per
gallon exceeded a specific threshold.  Id.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  An issue is considered genuine if the evidence allows a
reasonable jury to resolve the point in favor of the nonmoving
party, and a fact is considered material if it "is one 'that
might affect the outcome of the suit under the governing law.'"
United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d
200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for
summary judgment, I examine the evidence in the light most
favorable to the nonmoving party.  Navarro v. Pfizer Corp., 261
F.3d 90, 94 (1st Cir. 2001).

The party moving for summary judgment bears the initial
burden of identifying the portions of the record it believes
demonstrate an absence of disputed material facts.  Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In determining what
constitutes a material fact, "we safely can ignore 'conclusory

allegations, improbable inferences, and unsupported speculation.'" Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002) (quoting Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  On cross motions for summary judgment, the standard of review is applied to each motion separately.  See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

### III.  **ANALYSIS**

The drivers claim that FedEx must reimburse them for certain expenses that the drivers agreed to assume in the OA. They base their claim on section 275:57(I) of the New Hampshire Revised Statutes (the "Reimbursement Statute"),[2] which provides:

_____

[2] The drivers alternatively claim – for the first time in their renewed motion for summary judgment - that they are also entitled to reimbursement pursuant to section 275:43(I, V) of the New Hampshire Revised Statutes.  That section states that "[e]very employer shall pay all wages due to employees within 8 days . . . after expiration of the week in which the work is performed . . . ."  It also provides that "payment of employee expenses, when such benefits are a matter of employment practice or policy, or both, shall be considered wages . . . when due." To the extent this claim constitutes a motion to amend the drivers' third amended complaint, I deny it on the ground that the proposed amendment would be futile.  See Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006) (denial of a motion to amend is warranted if the amended complaint fails to allege a viable claim).  It is clear for all the reasons discussed below that reimbursement of the claimed expenses in

An employee who incurs expenses in connection with his or her employment and at the request of the employer, except those expenses normally borne by the employee as a precondition of employment, which are not paid for by wages, cash advance, or other means from the employer, shall be reimbursed for the payment of the expenses within 30 days of the presentation by the employee of proof of payment.

FedEx responds by invoking the exception in the statute for expenses "paid for by wages, cash advance, or other means."[3]  The assumptions underlying FedEx's interpretation of the exception are: (1) the Reimbursement Statute does not require an employer to reimburse an employee for expenses that are "paid for" by "wages"; (2) the "other means" by which an employer can pay for expenses and thereby avoid the duty to reimburse encompasses means of payment similar to "wages," see, e.g., State v.

---

this case was never "a matter of employment practice or policy." See N.H. Rev. Stat. Ann. § 275:43; Doc. No. 80-1.

[3] FedEx also relies on the exception for "expenses normally borne by the employee as a precondition of employment."  This exception appears to have been added to the statute to exempt expenses that are not expressly assumed by an employee but that are typically borne by employees in that business as a matter of custom or practice.  See Work Session on S.B. 402 before the H. Subcomm. on Labor, Indus. & Rehabilitative Servs., 2000 Gen. Ct., 157th Sess. (N.H. Mar. 16, 2000) (statement of Rep. Whittier) ("Concerns were expressed about allowing an employee to bring an action against his employer for expenses that were normally borne by the employee.  Rep. Clegg cited the example of a mechanics [sic] tools.  An amendment will be drafted.").  I need not determine whether this exception applies here because the drivers expressly agreed to assume the expenses at issue in the OA.

Beauchemin, 161 N.H. 654, 658 (2011) ("[W]here specific words in
a statute follow [or precede] general ones, the general words
are construed to embrace only objects similar in nature to those
enumerated by the specific words." (quoting State v. Breed, 159
N.H. 61, 65 (2009))); and (3) a payment that an employer makes
to a statutory employee[4] in exchange for an agreement to perform
services and assume related expenses is subject to the exception
because it is a means of payment similar to the payment of
expenses with "wages."  After proposing its interpretation of
the exception, FedEx argues that the drivers are not entitled to
be reimbursed for their expenses because the payments they
received pursuant to the OA are the "other means" by which they
were paid for their expenses.

The drivers attack both FedEx's interpretation of the
exception and its attempt to apply the exception to the facts of
this case.  They concede that a worker classified as an employee
under both statute and common law would have no right to
reimbursement if he or she were to accept payment from an

---

[4] In a prior ruling, the multidistrict litigation transferee
court held that the drivers are "independent contractors" at
common law but "employees" under certain state statutes,
including the Reimbursement Statute.  In re FedEx Ground Package
Sys., Inc., 758 F. Supp. 2d 638, 698 (N.D. Ind. 2010).  I refer
to employees who have this status as "statutory employees."

employer in exchange for agreeing to assume work-related expenses.[5]   The drivers argue, however, that FedEx has misinterpreted the exception in this case because it does not apply at all to statutory employees who are classified as independent contractors under the common law and who are characterized as such by their employers.   They also contend that FedEx's argument fails even if it has correctly interpreted the statute because the payments they received pursuant to the OA were expressly made solely for "services" and were never intended to serve as reimbursement for expenses.   I find neither argument persuasive.

A.    **The Reimbursement Statute**

The New Hampshire Supreme Court takes a common sense approach to statutory interpretation.   Words are given their plain and ordinary meaning unless context suggests otherwise. Appeal of the Local Gov't Ctr., Inc., No. 2012-729, 2014 WL 92992, at *7 (N.H. Jan. 10, 2014).   The statute is construed as

_____

[5] See Doc. No. 79 (citing Doc. No. 72) ("The Court also posited a hypothetical in which an employee negotiates with an employer for an [sic] $5 an hour in salary in exchange for bringing in his own laptop to work but later asks to be reimbursed under § 275:57 for the cost of the computer.   Under that hypothetical, the employee's purchase would be included within the 'other means' exception in § 275:57, and there would be no right of recovery.").

written and the court "will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. A court will "not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id.

In this case, the applicability of the exception turns both on whether the expenses at issue were "paid for" by FedEx and, if so, whether the means of payment qualifies as an "other means."

1.   "Paid For"

The exception exempts work-related expenses assumed by an employee that are paid for by the employer via one of the designated categories of payment. It is generally understood that something is "paid for" when the payor "[p]erform[s] . . . an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation." See Black's Law Dictionary 1243 (9th ed. 2009) (defining "payment"). In this case, the parties' obligations were established by contract and the "valuable thing[s]" accepted by the drivers were their settlement payments.[6] Thus, in cases such

---

[6] The drivers received other valuable things from FedEx as well, including "access to national accounts" and association with the

as this where payments are made pursuant to contract, the term
"paid for" may be aptly restated in contract parlance as
"incurred in consideration for."   See id. at 347
("Consideration" is "[s]omething . . . bargained for and
received by a promisor from a promisee; that which motivates a
person to do something . . . ."); see also Appeal of Lorden, 134
N.H. 594, 600 (1991) ("[T]he traditional definition of
'consideration'[ is] 'legal detriment, that has been bargained
for by the promisor . . . and exchanged by the promisee . . . in
return for the promise of the promisor.'" (quoting John D.
Calamari & Joseph M. Perillo, Contracts § 4-2, at 189 (3d ed.
1987))), superseded by statute on other grounds, 1992 N.H. Laws
203:1.

    2.   "Other Means"

    The exception also describes the categories of payment that
qualify for the exception.   To characterize these categories, I
first look to the manner in which the legislature has defined
the same terms elsewhere in chapter 275, which codifies New
Hampshire's employee-protective legislation.   See, e.g., Paey v.

---

goodwill of a successful corporation.   See Doc. No. 80-1.   These
intangible benefits would ultimately be expected to lead to
increased settlement payments, however.   In any event, it is
sufficient for present purposes to limit my consideration of the
benefits received by the drivers to their settlement payments.

Rodrigue, 119 N.H. 186, 188 (1979) (construing the meaning of words within two statutes governing similar subject matter in pari materia).   The only relevant term that is expressly defined in chapter 275 is "wages."   The legislature has defined "wages" in section 275:42(III) to mean "compensation, including hourly health and welfare, and pension fund contributions . . . for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation."   Section 275:43(V) expands the scope of this definition: "Vacation pay, severance pay, personal days, holiday pay, sick pay, and payment of employee expenses, when such benefits are a matter of employment practice or policy, or both, shall be considered wages pursuant to RSA 275:42, III, when due."[7]   The term's traditional definition is similarly broad. See Black's Law Dictionary, supra, at 1716 ("Wages" are "[p]ayment for labor or services, usu[ally] based on time worked

---

[7] These definitions are only applicable to a subdivision of chapter 275 concerning "payment of wages."   See N.H. Rev. Stat. Ann. §§ 275:42-:55.   Although the Reimbursement Statute is not situated in the "payment of wages" subdivision, the enforcement and administration of its substantive provisions is governed by the wage claim procedures described in section 275:51, which is situated in the "payment of wages" subdivision.   See id. § 275:57(II).   Given that the Reimbursement Statute expressly incorporates portions of the "payment of wages" subdivision, the definition of the term "wages" in that subdivision is particularly significant here.

or quantity produced; specif[ically], compensation of an
employee based on time worked or output of production. . . .
includ[ing] every form of remuneration payable for a given
period to an individual for personal services").

These definitions lead me to two conclusions.  First, the
term "wages," both as generally understood and as used by the
legislature in other circumstances, is construed quite broadly
to include virtually any benefit that an employer provides to an
employee as compensation for the employee's services.  Second,
the term "services" (for which wages are provided) is construed
in a similarly broad fashion to include detriments that an
employee incurs on behalf of an employer beyond the simple
provision of labor.  In particular, both section 275:43(V) and
the Reimbursement Statute contemplate that an employer may pay
an employee wages to compensate the employee for assuming
certain work-related expenses.

Although not statutorily defined, the term "cash advance"
has an equally expansive traditional meaning.  "Cash" is
"[m]oney or its equivalent[, c]urrency or coins, negotiable
checks, and balances in bank accounts," Black's Law Dictionary,
supra, at 245, and thus a "cash advance" is "[t]he furnishing of
[cash] before any consideration is received in return."  See id.

11

at 60 (defining "advance").  As used here, "money or its
equivalent" implies a variety of compensation methods, and "any
consideration" contemplates an almost infinite range of
potential detriments that an employee might incur on behalf of
his or her employer.  The only clear limitation that can be
gleaned from the definition of a "cash advance" is that the
employer must provide (typically monetary) compensation before
the employee provides consideration.

In contrast to "wages" and "cash advance," the term "other
means" carries no independent meaning.  Rather, its definition
is dependent on the specific terms accompanying it.  See, e.g.,
Beauchemin, 161 N.H. at 658; Narramore v. Clark, 63 N.H. 166,
167 (1884).  Because "other means" may be construed "to embrace
only objects similar in nature to" the more specific terms
"wages" and "cash advance," see Beauchemin, 161 N.H. at 658, it
is reasonable to conclude that the legislature intended "other
means" to refer to a benefit (such as money or its equivalent)
that is provided to an employee in exchange for a service (such
as a promise to assume work-related expenses) that is provided
to an employer.  This definition, although not a paragon of
precision, draws on elements of the traditional and statutory
definitions of "wages" and "cash advance" and is in keeping with

12

the expansive scope of both of those terms.  It thus sufficiently captures the legislative intent to permit a broad range of payment methods to qualify for the exception.[8]

In sum, the first part of the exception exempts all expenses assumed by an employee in consideration for a benefit provided by the employer, and the second part only restricts the benefits that qualify for exemption to means of payment that are similar to wages and cash advances.  If an employee promises to perform services for an employer in a manner that assumes work-related expenses and the employer promises to provide a benefit to the employee in consideration for the employee's promise, then their agreement is part of the bargain forming an enforceable contract and the expenses have been paid for by the benefit promised by the employer.  This is true whether the employee is a common law employee who is paid in wages or a statutory employee paid through "other means."

---

[8] I recognize that in the absence of countervailing factors, remedial legislation should be construed expansively and exceptions to remedial obligations construed narrowly.  See Cobb v. Contract Transp., Inc., 452 F.3d 543, 559 (6th Cir. 2006). But any canon of statutory interpretation is outweighed by a clear indication of legislative intent.  Chagnon v. Union-Leader Corp., 104 N.H. 472, 474 (1963), superseded by statute on other grounds, 1963 N.H. Laws 293.  With respect to the Reimbursement Statute, the legislature clearly intended to broadly exempt all work-related expenses assumed by employees in consideration for a benefit provided in return by their employers.

## B.   __The Drivers' Interpretation__

The drivers challenge this interpretation of the exception and instead contend that the exception simply does not apply to expenses incurred by statutory employees who qualify as independent contractors under the common law.  Rather than relying on textual arguments, they base their proposed interpretation on two policy arguments.  First, they maintain that their interpretation should be adopted because employers will otherwise have an incentive to "misclassify" their employees as independent contractors.  Next, they argue that the statute's designation as "protective legislation" requires that it be construed in their favor.  Neither argument has merit.[9]

---

[9] The drivers also contend that an interpretation of the Reimbursement Statute that permits statutory employees to assume work-related expenses without being entitled to reimbursement would contravene section 275:50(I) of the New Hampshire Revised Statutes.  That section provides in relevant part that "no provision of this subdivision may in any way be contravened or set aside by private agreement."  The relevant subdivision, governing "payment of wages," does not incorporate the Reimbursement Statute.  See supra note 7.  Section 275:50(I) would thus appear to have no application to the Reimbursement Statute.  Nevertheless, the New Hampshire Supreme Court has held that section 275:50 "prohibits the waiver by private agreement of any provision of RSA chapter 275."  Fowler v. Town of Seabrook, 145 N.H. 536, 539 (2000).  Although it is difficult to reconcile section 275:50's text with the Fowler court's interpretation of it, I need not determine the provision's true scope because it does not save the drivers' claim in any event. The claimed expenses were "paid for by wages, cash advance, or

14

1.  <u>Misclassification as Independent Contractors</u>

The drivers claim that an adverse decision in this case will give employers "every incentive to (1) misclassify their workforce and (2) force all of their business expenses on that workforce, secure in the knowledge that if a court nullifies their classification, the misclassified employees will have no remedy to recover the business expenses they improperly bore." Doc. No. 79.  According to the drivers, this would mean that "[m]isclassified employees would have fewer rights than properly classified employees."  <u>Id.</u>

These concerns are unwarranted.  The Reimbursement Statute grants "misclassified"[10] statutory employees exactly the same rights as workers who are properly classified as employees for all purposes under statute and common law.  In New Hampshire,

---

other means," thus the drivers have no rights under the Reimbursement Statute that they could waive by private agreement.

[10] Under both Pennsylvania law, which governs the OA, <u>see</u> Doc. No. 80-1, and New Hampshire common law, the drivers are considered independent contractors rather than employees.  <u>See</u> FedEx Ground Package Sys., 758 F. Supp. 2d at 698, 717. Consequently, FedEx did not misclassify the drivers by labeling them independent contractors.  Because the drivers are only employees pursuant to certain New Hampshire statutes, FedEx erred only insofar as it made impermissible deductions from their settlement payments.  <u>See</u> <u>id.</u> at 699; Gennell, 2013 DNH 110, 23-25 (holding as such).

employers and their workers - regardless of classification - may
mutually agree to apportion work-related expenses to either
party.  Contrary to the drivers' assumption, simply labeling a
common law or statutory employee as an independent contractor
does not mean that the employee must then bear all his or her
work-related expenses as a matter of law.  That issue remains
negotiable between the employee and the employer.[11]

   2.  Protective Legislation

   The drivers next argue that FedEx's interpretation of the
Reimbursement Statute ignores the legislature's intent, and the
New Hampshire Supreme Court's instruction, that "protective
legislation" such as the Reimbursement Statute should be
construed so as "to effectuate [chapter 275's] broad purpose of

---

[11] In contrast, the California legislature has enacted a law that
does restrict an employer's ability to require employees to
assume expenses as part of an employment agreement.  California
Labor Code section 2802(a) provides that:

> An employer shall indemnify his or her employee for
> all necessary expenditures or losses incurred by the
> employee in direct consequence of the discharge of his
> or her duties, or of his or her obedience to the
> directions of the employer, even though unlawful,
> unless the employee, at the time of obeying the
> directions, believed them to be unlawful.

Thus it is per se unlawful in California for an employment
contract to apportion expenses to an employee.  Edwards v.
Arthur Andersen LLP, 189 P.3d 285, 295 (Cal. 2008).  Not so in
New Hampshire.

protecting employees." Doc. No. 79 (quoting Galloway v.
Chicago-Soft, Ltd., 142 N.H. 752, 759 (1998)).  The drivers are
undoubtedly correct that the remedial legislation in chapter 275
should be interpreted in an employee-protective manner.  But
that does not mean that it must be interpreted in the most
employee-protective manner conceivable.  To the contrary, New
Hampshire courts are not hesitant to reach decisions adverse to
employees in cases applying chapter 275 legislation if the
circumstances so require.  See, e.g., Grimard v. Rockingham
Cnty. Dep't of Corr., 161 N.H. 69, 73 (2010) (construing N.H.
Rev. Stat. Ann. § 275:43-b(I)); Labor Ready Ne., Inc. v. N.H.
Dep't of Labor, 147 N.H. 721, 723 (2002) (construing N.H. Rev.
Stat. Ann. § 275:51(I)).  Accordingly, I reject the drivers'
proposed interpretation and instead conclude that the exception
covers statutory employees who are paid for their expenses by
other means.

**C.    The Operating Agreement**

        The drivers next claim that regardless of my interpretation
of the Reimbursement Statute, their expenses were not "paid for"
by FedEx because the OA clearly states that the settlement
payments were provided exclusively as compensation for services.
They quote several provisions of the OA which note that payments

are provided in return "for services provided" or for periods in
which a driver "provides services" under the OA.[12]   See Doc. No.
80-1.   The drivers argue that this unambiguous language clearly
specifies that their labor, rather than their expenses, was
"paid for by wages, cash advance, or other means," and that the
drivers, rather than FedEx, were required to "bear all costs and
expenses incidental to operation of the[ir vehicles]."[13]   Doc.
No. 79 (quoting N.H. Rev. Stat. Ann. § 275:57(I); Doc. No. 80-

---

[12] The drivers never explain what they believe the term
"services" entails as it is used in the OA, other than that it
does not include assuming work-related expenses.   See Doc. Nos.
79, 87.   I assume that they interpret "services" to refer only
to labor, such as dropping off and picking up packages.

[13] The drivers rely heavily on a California state court decision
in support of this view.   See Estrada v. FedEx Ground Package
Sys., Inc., 64 Cal. Rptr. 3d 327, 339 (2007).   As read by the
Estrada court, the OA "provides that it is 'for services
provided,' not expenses incurred," and thus the "suggestion that
the settlement formula is keyed to specific expenses and, as
such, includes reimbursement for those expenses, is not
supported by any evidence."   Id.   If my conclusion to the
contrary appears to be in conflict with Estrada's reasoning, it
is enough to note that the Estrada court construed the OA in
light of a markedly different reimbursement statute.   See supra
note 11.   In California, "[a]n employer shall indemnify his or
her employee for all necessary expenditures," without
qualification or exception, see Cal. Lab. Code § 2802(a), and
California employers are consequently required to segregate
employee compensation between labor and expense reimbursement.
See infra note 16 (citing Gattuso v. Harte-Hanks Shoppers, Inc.,
169 P.3d 889, 891 (Cal. 2007)).   It is therefore not surprising
that Estrada considered whether the OA's settlement structure
was "keyed to specific expenses" to determine whether FedEx had
complied with section 2802(a) of the California Labor Code.

1).  The drivers also present extrinsic evidence in support of their view, which I need not consider in light of my agreement with them that the terms of the OA are clear.[14]  Cf. Dillman v. N.H. Coll., 150 N.H. 431, 434 (2003) (citing Galloway, 142 N.H. at 756; Erin Food Servs., Inc. v. 688 Props., 119 N.H. 232, 235 (1979)) ("[T]he interpretation of a contract is an issue of law for this court to resolve. . . . and the trial court . . . properly look[s] to extrinsic evidence" when "contract terms are ambiguous").[15]

As the drivers concede, the settlement payments they

---

[14] Two expenses claimed by the drivers are not explicitly mentioned in the OA: Department of Transportation physical exams and mobile phone costs.  See Doc. No. 80-1.  Assuming that the drivers incurred both expenses "at the request of" FedEx, see N.H. Rev. Stat. Ann. § 275:57(I), I find that the OA apportions them to the drivers and that this apportionment would be clear to any reasonable person under the circumstances.  The drivers agreed in the OA "to bear all costs and expenses incidental to operation of [their vehicles], including, without limitation," a long list of potential expenses, some of which have an exceedingly attenuated connection to vehicle operation.  See Doc. No. 80-1 (including, for example, workers compensation assessments).  It thus seems clear in context that any work-related expenses for physical exams or mobile phones were "incidental to operation of" the drivers' vehicles.

[15] Although the OA is governed by Pennsylvania law, see Doc. No. 80-1, neither party mentions this fact or cites a single Pennsylvania case in support of their arguments.  Because the parties note no differences between the law of New Hampshire and that of Pennsylvania as it pertains to the basic contract principles at issue here, I follow their lead and rely on New Hampshire case law in my examination of the OA.

received were provided in exchange for their agreement to

"provide[] services under the [OA]." See Doc. No. 80-1.  This

necessarily incorporates the terms of the OA, which required the

drivers to, among other things, bear the costs of purchasing or

leasing their vehicles, maintaining their vehicles, and

purchasing fuel.  As previously discussed, the drivers' promise

to comply with these terms was the consideration that they

offered to FedEx, and FedEx's promise to compensate the drivers

in accordance with the settlement structure was the

consideration that it offered to the drivers.  This bargained-

for exchange made the OA binding upon both parties.

Contrary to the drivers' contention, FedEx does not bear

the burden to identify exactly what portion of the settlement

payments represented compensation for services (in the limited

sense of dropping off and picking up packages) and what portion

represented compensation for expenses.[16]  The OA obligates the

---

[16] In contrast, FedEx would bear such a burden if California's
expense indemnification statute applied in New Hampshire.  See
Gattuso, 169 P.3d at 891 (citing Cal. Lab. Code § 2802(a))
("[A]n employer may satisfy its statutory reimbursement
obligation by paying employees enhanced compensation . . .
provided there is a means or method to apportion the enhanced
compensation to determine what amount is being paid for labor
performed and what amount is reimbursement for business
expenses.").  As previously discussed, the New Hampshire
legislature has not defined "services" in a manner that

drivers to provide services under terms and conditions that
include the assumption of certain expenses and it obligates
FedEx to pay the drivers for doing so.  Labor provided in a
manner inconsistent with these terms and conditions – for
instance, making all required pickups and deliveries on a
bicycle – would constitute a material breach of the OA, thereby
excusing FedEx from making any payments at all to that driver.[17]

_____

differentiates so sharply between labor and work-related
expenses.  Nothing in New Hampshire law requires an employer to
distinguish between the two when compensating workers.

[17] This is true for two reasons.  First, the OA is not a
divisible contract with separate employee obligations to (1)
pick up and deliver packages and (2) bear certain work-related
expenses so as to perform the first obligation in a particular
fashion.  See In re Trailer & Plumbing Supplies, 133 N.H. 432,
435 (1990) ("If the parties gave a single assent to the whole
transaction, the contract is indivisible, while it is divisible
if they assented separately to several things." (quoting Lemire
v. Haley, 91 N.H. 357, 360 (1941))).  Thus, a breach of any
material term of the OA by a driver would wholly excuse FedEx
from its obligations under the OA.  Second, the drivers'
agreement to assume work-related expenses is a material term of
the OA.  For a contract term to be material, it:

> must go to the root or essence of the agreement
> between the parties, or be one which touches the
> fundamental purpose of the contract and defeats the
> object of the parties in entering into the contract.
> A breach is material if: (1) a party fails to perform
> a substantial part of the contract or one or more of
> its essential terms or conditions; (2) the breach
> substantially defeats the contract's purpose; or (3)
> the breach is such that upon a reasonable
> interpretation of the contract, the parties considered

The OA's settlement structure as a whole constitutes the consideration for the drivers' promise to assume material obligations in the OA that are not expressly tied to a particular component of the settlement structure, such as the obligation to incur work-related expenses.  Hence, FedEx need not point to any particular portion of the settlement structure to prove that the drivers were paid for assuming the claimed expenses by the settlement structure as a whole.

The OA clearly establishes that the drivers promised FedEx that they would assume the claimed expenses, and that FedEx promised the drivers that it would pay them for doing so in the course of "provid[ing] services under the Agreement."  See Doc. No. 80-1.  This bargained-for exchange demonstrates that FedEx has "paid for" the drivers to bear the claimed expenses by "other means" as those terms are understood in the Reimbursement Statute.

_____

the breach as vital to the existence of the contract.

Found. for Seacoast Health v. Hosp. Corp. of Am., 165 N.H. 168, 181-82 (2013) (internal quotation marks omitted) (quoting Ellis v. Candia Trailers & Snow Equip., 164 N.H. 457, 467 (2012)). Failure to incur the relevant expenses would surely constitute a material breach of the OA under all three of the Seacoast Health tests.  See id.

IV.   **CONCLUSION**

It is undisputed that the drivers shouldered the burden of the claimed expenses throughout their employment with FedEx. The OA clearly establishes that such an arrangement was the mutual intention of the contracting parties.  It is equally clear that the Reimbursement Statute was not intended to frustrate the parties' intentions or limit their freedom of contract, at least to the extent of apportioning work-related expenses.  Accordingly, I conclude that the claimed expenses were "paid for by wages, cash advance, or other means" and that the drivers have no right to reimbursement under the Reimbursement Statute.  I grant FedEx's renewed motion for summary judgment (Doc. No. 84) and deny the drivers' renewed motion for partial summary judgment (Doc. No. 78) on the reimbursement claim (Count VIII).

SO ORDERED.


                              /s/Paul Barbadoro
                              Paul Barbadoro
                              United States District Judge

March 19, 2014

cc:  Susan E. Ellingstad, Esq.
     Jordan M. Lewis, Esq.
     Edward K. O'Brien, Esq.
     Jozef Kopchick, Esq.

Kenneth Sansom, Esq.
Leann M. Walsh, Esq.
James C. Rehnquist, Esq.
Lucy J. Karl, Esq.